John BELCHER, d/b/a Belcher Refrigeration, Appellant,

v.

Ralph HAMILTON et al., Appellees.

Court of Appeals of Kentucky.

Nov. 5, 1971.

Rehearing Denied Feb. 18, 1972.

Harris S. Howard, Howard, Francis & Howard, Prestonsburg, for appellant.

W. W. Burchett, Joe Hobson, Prestonsburg, J. K. Wells, Paintsville, for appellees.

DAVIS, Commissioner.

Appellee Ralph Hamilton, plaintiff in the trial court, bought a frozen-food case from appellant·John Belcher, who was a distributor for The Warren Company. The equipment malfunctioned shortly after Belcher installed it, and despite its being restored to operating condition on occasions, periodically "went down," resulting in loss by Hamilton of frozen merchandise in the unit.

Hamilton sued Belcher, The Warren Company, and Kentucky Power Company, seeking recovery for the merchandise lost and the cost of the equipment. The trial court gave directed verdicts absolving The Warren Company and Kentucky Power Company. The issues were submitted to a jury as between Hamilton and Belcher. The jury found for Hamilton in the sum of $2750. Belcher attacks the judgment entered on that verdict, asserting that (1) a directed verdict in his favor should have

been granted; (2) erroneous instructions were given; and (3) a proffered instruction was erroneously refused.

The unit was installed by Belcher on May 12, 1967. Its cost was $2750. It performed satisfactorily until June 28, 1967, when it "went down." The unit failed to refrigerate, thus causing spoilage of the frozen food in it; Hamilton testified that his food loss on that occasion amounted to $414.44. Belcher's son and business associate was called and was able to make the unit operable.

On July 27, 1967, the equipment "went down" again, resulting in loss of foodstuff of $482.20, according to Hamilton. When Belcher undertook to remedy the trouble, he was not able to do so, Hamilton stated. Belcher testified that he did get the equipment back in operating condition on that occasion.

Fred Goble, an electrician, "started" the freezer shortly after the breakdown of July 27. However, Hamilton did not let the unit run then, but shut it off. He later caused Goble to start the equipment in November 1967; it ran without incident until February 1968, when it "went down" again. Goble fixed it then, and it ran until May 29, 1968, when it stopped, never to run again, so far as appears of record.

The Warren Company was discharged of liability by the trial court on the basis of its restricted warranty. Kentucky Power Company had been brought in on the theory that it had furnished low voltage, but the proof on that was deemed insufficient. Belcher named both Warren and Kentucky Power as appellees, but states in his brief that he agrees that the trial court properly directed verdicts for them.

Belcher urges that there was not a sufficient showing of negligence on his part. This overlooks the fact that the complaint adequately gives notice of the complainant's assertion of a breach of the implied warranty of merchantability ex-

pressed in the Uniform Commercial Code, KRS 355.2–314, which provides, in pertinent part:

"(1) Unless excluded or modified (KRS 355.2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. * * *.

"(2) Goods to be merchantable must be at least such as * * *

(c) are fit for the ordinary purposes for which such goods are used; * * *."

It may well be that the implied warranty of fitness for a particular use, as prescribed by KRS 355.2–315, was shown also, but it is unnecessary to resolve that. Belcher was not entitled to a directed verdict in face of the evidence warranting a finding of a breach of the implied warranty of merchantability, even if there were no evidence of negligence on Belcher's part.

Belcher complains that the jury was instructed that it could impose liability on him if it believed from the evidence that the refrigeration equipment "was not sound in construction." He reasons that since he did not construct the equipment no liability could attach to him on the basis of unsound construction. This, too, overlooks the implied warranty of merchantability just mentioned. There is no merit in the assignment of error. See 49 Ky.Law Journal 240, et seq.

Finally, Belcher asserts that the court erred in refusing his offered instruction to the effect that before the jury could find for Hamilton it must believe that the unit was permanently damaged and beyond repair. The court laid the measure of damages as the difference, if any, in the value of the refrigerator as it was installed and the value it would have had had it been sound in construction and properly installed. The jury was instructed that it could make an award for the loss

of foodstuff incident to malfunctions of the equipment.

KRS 355.2–714(2) and (3) provide the measure of damages and range of permissible recovery for breach of warranty, using this language:

"(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

"(3) In a proper case any incidental and consequential damages under KRS 355.2–715 may also be recovered."

The court instructed within the framework of the quoted statutory provision.

The judgment is affirmed.

All concur.